UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KASEY PERRON,

                Petitioner,

v.

SARAH SCHROEDER,

                Respondent.

_____/

Case No. 2:22-cv-11

Honorable Jane M. Beckering

## **OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

## Discussion

### I.      Factual allegations

Petitioner Kasey Perron is incarcerated with the Michigan Department of Corrections at the Alger Correctional Facility (LMF) in Munising, Alger County, Michigan.  On November 2, 2018, Petitioner pleaded guilty in the Chippewa County Circuit Court to one count of first-degree criminal sexual conduct (CSC-I), in violation of Mich. Comp. Laws § 750.520b, and one count of assault with intent to commit criminal sexual penetration, in violation of Mich. Comp. Laws § 750.520g.  (Plea Hr'g Tr., ECF No. 1-2, PageID.36–50.)  On February 12, 2019, the court sentenced Petitioner to concurrent prison terms of 15 to 30 years for the CSC-I conviction and 4 years, 9 months to 10 years for the assault conviction.  (Sentencing Hr'g Tr., ECF No. 1-2, PageID.62–81; J. of Sentence, ECF No. 1-2, PageID32–33.)  Petitioner filed a motion in the trial court challenging the accuracy of the presentence investigation report and seeking resentencing. The trial court heard the motion on November 26, 2019, and denied relief.  (Mot. Hr'g Tr., ECF No. 1-2, PageID.51–61.)

Petitioner, with the assistance of counsel, filed an application for leave to appeal to the Michigan Court of Appeals, raising the same issues he raises in his habeas petition.  By order entered May 1, 2020, the court of appeals denied leave "for lack of merit in the grounds presented." (Mich. Ct. App. Order, ECF No. 1-2, PageID.34.)  Petitioner then filed a *pro per* application for leave to appeal to the Michigan Supreme Court.  That court denied leave by order entered October 7, 2020.  (Mich. Order, ECF No. 1-2, PageID.35.)

On January 24, 2022, Petitioner timely filed his habeas corpus petition raising one ground for relief, as follows:

> I.      Petitioner was denied his rights to due process, equal protection of the law, fair sentencing, and right to a trial by jury as guaranteed by the 4th, 6th, and 14th Amendments to the United States Constitution, where his sentences

were based on inaccurate information, facts not established beyond a reasonable doubt by a jury or plea, and the trial court engaged in impermissible fact-finding which caused the facts to improperly become ingredients of the offenses when his sentencing guidelines were scored and the constitutional[l]y invalid facts were relied upon to impose his sentence.

(Pet., ECF No. 1-2, PageID.8.)

## II.    AEDPA standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)).  This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court.  28 U.S.C. § 2254(d).  In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002).  Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication

of the merits in state court.  *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011).  Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

Determining whether a rule application was unreasonable depends on the rule's specificity.  *Stermer*, 959 F.3d at 721.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664.  "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d

4

652, 656 (6th Cir. 2001).  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review.  The federal court is not free to consider any possible factual source.  The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits."  *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011).  "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of § 2254(d) are satisfied and the federal court can review the underlying claim on its merits.  *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"— for example, if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721.  Then, the petitioner's claim is reviewed *de novo*.  *Id*. (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

## III.     Discussion

Petitioner contends his sentences were unconstitutional, but the heart of his claim is that the trial court erred when scoring the offense variables under the Michigan sentencing guidelines.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Note to Rule 4, Rules Governing Habeas Corpus Cases).

The federal courts have no power to intervene on the basis of a perceived error of state law. *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984). Claims concerning the improper application of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373–74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301–02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief).

Petitioner makes two attempts to shoehorn his offense variable scoring challenge into the confines of habeas cognizability:  first, Petitioner contends that the court's scoring of the guidelines was based on facts that were neither found by a jury nor admitted by Petitioner and, therefore, the scoring violated Petitioner's Sixth Amendment right to trial by jury; and second, Petitioner claims that the court's scoring was based on material and false facts and, therefore, the resulting sentence violated Petitioner's Fourteenth Amendment right to due process. Both claims are meritless.

The claim that the trial court impermissibly based Petitioner's sentence on facts that were neither found by a jury nor admitted by Petitioner is based on a line of cases beginning with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and including *Ring v. Arizona*, 53 U.S. 584 (2002), *Blakely v. Washington*, 542 U.S. 296 (2004), *United States v. Booker*, 543 U.S. 220 (2005), and *Alleyne v. United States*, 570 U.S. 99 (2013). In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. *Apprendi* enunciated a new rule of Sixth Amendment jurisprudence. In

the subsequent case of *Blakely*, the Court applied the rule of *Apprendi* to a state sentencing-guideline scheme, under which the maximum penalty could be increased by judicial fact-finding. The *Blakely* Court held that the state guideline scheme violated the Sixth and Fourteenth Amendments, reiterating the rule that any fact that increases the maximum sentence must be "admitted by the defendant or proved to a jury beyond a reasonable doubt." *See Booker*, 543 U.S. at 232 (citing *Blakely*, 542 U.S. at 303).

Subsequently, in *Alleyne*, 570 U.S. 99, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. In *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), the Michigan Supreme Court held that, under *Alleyne*, the Michigan sentencing guidelines scheme violates the Sixth Amendment, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables [] that *mandatorily* increase the floor of the guidelines minimum sentence range." *Lockridge*, 870 N.W.2d at 506 (emphasis in original). The Court's remedy for the unconstitutionality of the Michigan guidelines was to sever and strike the mandatory component of the guidelines and make the guidelines advisory only. *Id.* at 520–21 (relying on *Booker,* 543 U.S. at 264–65 (holding that the remedy for the unconstitutionality of the mandatory federal sentencing guidelines was to sever only the mandatory component, still requiring courts to consider the guidelines, but making them advisory and subject to review for reasonableness)).

On August 24, 2018, the Sixth Circuit agreed with the *Lockridge* analysis. *Robinson v. Woods*, 901 F.3d 710 (6th Cir. 2018). The *Robinson* court held that the Supreme Court's decision in *Alleyne* clearly established that Michigan's mandatory minimum sentencing scheme was unconstitutional. *Robinson*, 901 F.3d at 714. The court reasoned that, "[a]t bottom,

Michigan's sentencing regime violated *Alleyne*'s prohibition on the use of judge-found facts to increase mandatory minimum sentences." *Id.* at 716 (citing *Alleyne*, 570 U.S. at 111–12).

Petitioner's reliance on *Alleyne* is misplaced.  He was sentenced long after the Michigan Supreme Court had declared the Michigan sentencing guidelines to be advisory only. Thus, to the extent the judge sentencing Petitioner relied on the sentencing guidelines to determine Petitioner's sentence, he was acting on his own discretion, not pursuant to a legislative mandate.

From the inception of this line of authority in *Apprendi* to its most recent refinement in *Alleyne*, the United States Supreme Court has never suggested that judicial fact-finding in support of the court's exercise of discretion, as happened here, violates the Sixth Amendment.  *See Booker*, 543 U.S. at 232 ("If the Guidelines as currently written could be read as merely advisory provisions that recommended, rather than required, the selection of particular sentences in response to differing sets of facts, their use would not implicate the Sixth Amendment.  We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range."); *see also Apprendi*, 530 U.S. at 481–82 (reiterating that "a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review") (emphasis added) (quoting *United States v. Tucker*, 404 U.S. 443, 447 (1972)); *see also Reign v. Gidley*, 929 F.3d 777, 781 (6th Cir. 2019) ("But the constitutional error here was the mandatory application of the guidelines, not merely the consideration of judge-found facts.").  Petitioner's *Alleyne* claim, therefore, lacks merit.

Petitioner's Fourteenth Amendment claim fares no better.  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States*, 445 U.S. 552, 556 (1980); *see also Tucker*, 404 U.S. at 447; *Townsend v. Burke*, 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the

information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Stevens*, 851 F.2d 140, 143 (6th Cir. 1988); *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 444, 447.

Petitioner does not identify any facts found by the court at sentencing that were either materially false or based on false information. Instead, Petitioner uses the term "inaccurate." (Pet'r's Br., ECF No. 1-2, PageID.16, 19.) Petitioner contends the facts relied upon by the trial court were inaccurate because they were not found by a jury or admitted by Petitioner. As explained above, there is no such requirement. As that is the only ground upon which Petitioner bases his claim of "inaccuracy," the claim necessarily fails.

Petitioner also borrows from the AEDPA standard and argues that the trial court scored the challenged offense variables based on an unreasonable determination of the facts. In that regard, Petitioner is a little bit reckless with his use of the phrase "unreasonable determination of the facts."

Petitioner challenges the trial court's scoring of three offense variables: OV 8 regarding victim asportation or captivity; OV 13 regarding a continuing pattern of criminal behavior; and OV 19 regarding interference with the administration of justice. With regard to OV 8, Petitioner argues that the offense occurred in the home that both he and the victim lived in and he did not hold her captive, therefore, scoring any points for that variable would be an unreasonable determination of the facts. Some part, if not all, of the argument depends on Petitioner's erroneous assertion that the court cannot rely on facts if a jury did not find them or Petitioner did not admit

them.  But perhaps some part also relies on an argument that it is simply not sufficient to constitute asportation if Petitioner only moved the minor victim to parts of the house where his crimes would be less likely to be detected.[1]  Whether or not that movement is "asportation" is purely a matter of state law.  It is an application of the guidelines that is outside the scope of habeas review.  The trial court's determination—as affirmed by the court of appeals—that Petitioner asported the victim conclusively resolves that issue; it is axiomatically correct because the decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Moreover, whether or not the evidence of that movement was sufficient is also purely a matter of state law.  The Sixth Circuit described the scope of constitutional protection at sentencing with regard to the burden of proof as follows:

> But the Due Process Clause does not offer convicted defendants at sentencing the same "constitutional protections afforded defendants at a criminal trial."  *United States v. Silverman*, 976 F.2d 1502, 1511 (6th Cir. 1992) (en banc).  "[B]oth before and since the American colonies became a nation," *Williams v. New York* explains, "courts in this country and in England practiced a policy under which a sentencing judge could exercise a wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law."  337 U.S. 241, 246 (1949).  That tradition has become more settled over time, because "possession of the fullest information possible concerning the defendant's life and characteristics" is "[h]ighly relevant—if not essential—to [the judge's] selection of an appropriate sentence."  *Id*. at 247.  An imperative of "evidentiary inclusiveness"—"a frame of reference as likely to facilitate leniency as to impede it," *United States v. Graham–Wright*, 715 F.3d 598, 601 (6th Cir.2013)—explains why the Evidence Rules, the Confrontation Clause, and the beyond-a-reasonable-doubt standard of proof do not apply at sentencing.  *See United States v. O'Brien*, 560 U.S. 218, 224 (2010) (beyond a reasonable doubt); *Williams v. New York*, 337 U.S. at 246–47, 252 (Evidence Rules); *United States v. Katzopoulos*, 437 F.3d 569, 576 (6th Cir. 2006) (Confrontation Clause); *see generally United States v. Tucker*, 404 U.S. 443, 446 (1972).

---

[1] That was the "asportation" upon which the trial court relied in scoring the variable.  (Mot. Hr'g Tr., ECF No. 1-2, PageID.55–56.)

*United States v. Alsante*, 812 F.3d 544, 547 (6th Cir. 2016).  In *McMillan v. Pennsylvania*, 477 U.S. 79 (1986),[2] the Supreme Court acknowledged that "sentencing courts have always operated without constitutionally imposed burdens of proof . . . ."  *Id*. at 92 n.8.[3]

Petitioner's argument suggests that the federal constitution requires that, at the very least, facts in support of Offense Variable scoring must be proven by a preponderance of the evidence.  There is clearly established federal law that supports the conclusion that proof at sentencing by a preponderance of the evidence would satisfy due process.  *See, e.g.*, *United States v. Watts*, 519 U.S. 148, 156 (1997).  *Watts* notes that proof by a preponderance of the evidence would satisfy due process, but the Court did not say that due process requires it.  Rather, in *Watts*, it was the federal sentencing guidelines that required proof by a preponderance of the evidence and the Court only considered whether a higher standard—such as clear and convincing evidence—was constitutionally required.  Thus, *Watts* was not an attempt to establish the bottom

---

[2] *McMillan* was overruled in *Alleyne*.  *See United States v. Haymond*, 139 S. Ct. 2369, 2378 (2019) ("Finding no basis in the original understanding of the Fifth and Sixth Amendments for *McMillan* and *Harris* [*v. United States*, 536 U.S. 545 (2002)], the [*Alleyne*] Court expressly overruled those decisions . . . .").  The *McMillan* holding that was overruled, however, was the principle that factors implicating mandatory minimum sentences did not require proof beyond a reasonable doubt.  The underlying premise from *McMillan* quoted above—that there is no constitutionally required standard of proof to support discretionary sentencing decisions—survived *Alleyne* and, indeed, was effectively highlighted by *Alleyne* when the *Alleyne* Court distinguished mandatory from discretionary sentencing decisions.  None of the cases in the line of authority that culminated in *Alleyne*—*Apprendi*, 530 U.S. at 466, *Ring*, 53 U.S. at 584, *Blakely*, 542 U.S. at 296, and *Booker*, 543 U.S. at 220—suggest that the constitutionally required burden of proof that applies to facts found in support of mandatory maximum or minimum sentences applies to discretionary sentences.

[3] Even the term "burden of proof" can be misleading.  As the Supreme Court noted in *Mullaney v. Wilbur*, 421 U.S. 684 (1975), "[c]ontemporary writers divide the general notion of 'burden of proof' into a burden of producing some probative evidence on a particular issue and a burden of persuading the factfinder with respect to that issue by a standard such as proof beyond a reasonable doubt or by a fair preponderance of the evidence."  *Id*. at 695 n.20.  Generally, the Constitution places the burden of production and persuasion on the prosecutor to prove the elements of a charged offense and the standard of persuasion is "beyond a reasonable doubt."  There are times, however, where the Constitution permits the placement of the burden of production and persuasion on the defendant, for example, with regard to affirmative defenses.  It might be less confusing to refer to the required persuasive impact of the evidence as the standard of persuasion rather than the burden of proof.

limit of constitutional propriety; it merely held that a preponderance of the evidence standard of persuasion was constitutionally acceptable, even for acquitted conduct.[4]

Even though the State of Michigan may require that facts supporting a sentence be proven by a preponderance of the evidence, that requirement is a matter of state law, not the constitution.  Therefore, a sufficiency-of-the-evidence claim for sentencing, at least for a non-capital offense, is not cognizable on habeas review.  The same analysis applies to Petitioner's challenges to the scoring of OV 13 and OV 19.

But even if the state court got it wrong, even if the guidelines were improperly scored as Petitioner argues, he would not be entitled to habeas relief because the error was harmless.  For reasons of finality, comity, and federalism, habeas petitioners "are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.'" *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quoting *United States v. Lane*, 474 U.S. 438, 449 (1986)).  Under this test, relief is proper only if the federal court has "grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict.'"  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  There must be more than a "reasonable possibility" that the error was harmful.  *Brecht*, 507 U.S. at 637 (internal quotation marks omitted).  The *Brecht* standard reflects the view that a "State is not to be put to th[e] arduous task [of retrying a defendant] based on mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error."  *Calderon v. Coleman*, 525 U.S. 141, 146 (1998) (per curiam).

---

[4] As a practical matter, the preponderance of the evidence standard might be the lowest acceptable standard of persuasion, not because of the Due Process Clause, but because anything lower than "more likely than not" is not really persuasive at all.

Petitioner acknowledges that if the guidelines were scored consistently with his arguments, the minimum sentence range for the assault conviction would remain the same but the minimum range for the CSC-I conviction would change from 135–225 months to 108–180 months. Petitioner contends that the downward shift should require that he be resentenced; but he is wrong. Petitioner specifically agreed to the 15-year minimum sentence imposed by the trial court.

The sentence agreement "obviates the scoring of the sentencing guidelines[.]" *People v. Dunbar*, No. 333510, 2017 WL 5759754, at *4 (Mich. Ct. App. Nov. 28, 2017) ("[D]efendant was sentenced pursuant to a plea agreement, rather than the sentencing guidelines . . . ."); *see also United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005) (concluding that the sentence imposed under a plea agreement "arises directly from the agreement itself" and not from the sentencing guidelines), *cited in People v. Velez*, No. 315209, 2015 WL 5945364, at *4 (Mich. Ct. App., Oct. 13, 2015) (P.J. Boonstra, concurring) ("[B]ecause defendant agreed to a sentence within the guidelines range, the sentence imposed by the trial court 'arose directly from the plea agreement and was not based on any facts found only by the trial court.'"); *People v. Banks*, No. 326795, 2016 WL 3946207, at *2 (Mich. Ct. App., July 21, 2016); *People v. Faher*, No. 328285, 2016 WL 6127902, at *4 (Mich. Ct. App. Oct. 18, 2016) ("[W]hen a sentencing court imposes a sentence pursuant to the terms of a plea agreement bargained for and accepted by the defendant, the sentence is not affected by the court's perception of the mandatory or advisory nature of the sentencing guidelines . . . ."). By agreeing to a specific sentence Petitioner waived the challenge he now raises. *See, e.g.*, *People v. Wiley*, 693 N.W.2d 800 (Mich. 2005) (where defendant agreed to a minimum sentence of 38 years, but guidelines range was 15 to 25 years, the court held "a defendant waives appellate review of a sentence that exceeds the guidelines by understandingly and voluntarily entering into a plea agreement to accept that specific

13

sentence."); *People v. Cobbs*, 505 N.W.2d 208, 213 (Mich. 1993) ("[W]e caution that a defendant who pleads guilty or *nolo contendere* with knowledge of the sentence, and who later seeks appellate sentence relief under *People v. Milbourn*, 435 Mich. 630, 461 N.W.2d 1 (1990), must expect to be denied relief on the ground that the plea demonstrates the defendant's agreement that the sentence is proportionate to the offense and offender.").

Because Petitioner was sentenced based on his agreement—and not the guidelines—even if offense variables 8, 13, and 19 were improperly scored, the error was harmless.  Petitioner has failed to show that the state court's rejection of his claims is contrary to, or an unreasonable application of clearly established federal law, thus he is not entitled to habeas relief.

## IV.    Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists of reason could conclude the issues presented are adequate to deserve encouragement to

14

proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, for the same reasons the Court concludes that Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court also concludes that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.

Dated:   March 4, 2022                    /s/ Jane M. Beckering
                                          Jane M. Beckering
                                          United States District Judge